Elias V. Allen, Appellant, v. Cordelia Allen, Adm'x., et al., Appellees.

## Gen. No. 5313.

1. EVIDENCE—*when interest does not disqualify; when disqualifies.* If children of a deceased ancestor claim land in litigation as heirs at law of such ancestor, the testimony of the adverse party in his own behalf is not competent against them even though taken by the master before the death of such ancestor; but where such children claim not as heirs but as grantees in a deed from such ancestor, such adverse party is competent.

2. Conveyance—*burden of proof to establish nondelivery.* A claim that a deed was never delivered, but, upon the other hand, was placed in escrow and wrongfully recorded must be established by a preponderance of evidence by the party making it.

3. Liens—*when reservation contained in deed enforced.* If land sold upon execution has been redeemed for the benefit of the owner of the equity of redemption and upon a settlement a reconveyance is made to such owner subject to a right of user for a specified period, the value of such right of user will be recognized and enforced as a lien against the premises in question.

Bill in chancery. Appeal from the Circuit Court of Knox county; the Hon. Harry M. Waggoner, Judge, presiding. Heard in this court at the October term, 1909. Reversed and remanded with directions. Opinion filed October 18, 1910.

R. D. Robinson and Moreland & Moreland, for appellants.

E. J. King and M. J. Daugherty, for appellees.

Mr. Justice Dibell delivered the opinion of the court.

Marion Allen was in possession of 80 acres of land near Maquon, in Knox county. Andrew C. Housh, his judgment creditor, levied an execution on the interest of Marion Allen therein. The south 17 acres were set off for a homestead and the north 53 acres were bought by Housh at the execution sale. Thereafter Elias V. Allen, a brother of Marion Allen, purchased the certificate of sale from Housh for less than the face thereof, giving his notes to Housh therefor. In due time he obtained a sheriff's deed, mortgaged the property to one Huggins, and with that money paid the notes he had given Housh. Elias V. Allen did this to aid Marion Allen in redeeming the property. The execution sale was in 1888 and the sheriff's deed in 1889. Thereafter Elias worked the premises for six years by arrangement with his brother, Marion. The first three years he gave his brother, Marion, a share of the crop as rent. The second three years he allowed Marion a certain sum per acre per year as rent, and applied the same upon the indebtedness Elias had paid to Housh. Thereafter Marion resumed possession of the land.

In fact, Marion Allen owned only an undivided one-half of this 80 acre tract. The other undivided one-half thereof had been owned by his first wife, who had died intestate, leaving their six children, who inherited that undivided one-half subject to Marion's right of homestead. These six children seem to have been apprehensive that they would lose their rights in the land. On January 26, 1899, Elias V. Allen, Marion Allen and several of his children by his first wife met in the office of E. P. Williams, an attorney at Galesburg in said county, and the question whether Marion was still indebted to Elias upon the Housh redemption money and what should be done with the title held by Elias was the subject of discussion, and Elias executed and acknowledged a quit claim deed of said north 53 acres of said land to Marion Allen. It recited that it was given "for a valuable consideration, a portion of which is already paid, and the remainder to be hereafter paid as hereinafter mentioned," and after a description of the premises, it contained the following special provision:

"Subject however to the right of the grantor to the use and occupancy of the north forty (40) acres of said fifty-three (53) acres until the 1st day of March, 1902. The use of said forty (40) acres hereby expressly reserved and retained by the grantor, as compensation for part purchase price of the land herein sold, and Marion Allen expressly agrees to pay all taxes on the forty (40) acres during said time: and in default of his doing so, Elias V. Allen retains a lien on said premises and the right to occupy said forty (40) acres until all moneys due for taxes thereon during said three years are fully repaid to him."

The deed was then placed in the possession of J. M. Nisley, a banker at Knoxville in said county, where it remained about six years. It was then obtained by a son of Marion Allen and kept a few months and then Marion's second wife and one of his sons placed said instrument on record on January 16, 1906. On January 27, 1906, Elias V. Allen filed a bill in equity against Marion Allen, alleging that he held the title acquired by said sheriff's deed to secure him

for the money paid to Housh at his brother Marion's request, and that the deed of January 26, 1899, from himself to Marion was never delivered to Marion, but was placed in the hands of Nisley in escrow to be held till Elias had been paid in full for the amount due him by Marion; that such payment had not been made and that the possession of the said deed had been fraudulently procured by Marion or some one for him and that said deed had been fraudulently recorded, and that the title had never thereby passed to Marion Allen. The bill asked that the deed be surrendered, the record thereof canceled, that an accounting be had, and that, if Marion would pay Elias the sum due him, the land then might be conveyed to Marion. Marion Allen answered, alleging that he owned but an undivided one-half interest originally in the land and admitted the Housh judgment, and denying substantially all the other allegations of the bill. He denied that he was indebted to Elias, and alleged that he had a right to record the deed. The cause was referred to the master to take proofs and the testimony of Elias V. Allen was taken, but the testimony had not been completed nor reported to the court when Marion Allen died on December 5, 1907.

Marion Allen had also three children by his second wife. All his children were of age. On January 27, 1906, the same day on which Elias filed his original bill against Marion, the latter and his second wife, and his children, caused deeds to be prepared, which were executed that day by some of the parties and soon thereafter by the others who were resident elsewhere, and which were recorded a few months later. By those deeds the six older children conveyed their interest to their father, Marion, and Marion and his wife conveyed the farm, except eight acres in the southwest corner, to the nine children in equal parts, subject to a life estate in Marion; and Marion and wife conveyed the eight acres to a son and he conveyed the eight acres to the second wife, and she conveyed the eight acres to Marion for life. On December 30, 1907, soon after the death of Marion, certain of his children filed a bill against the rest of the children for a partition of the 72 acres, to which suit Elias V. Allen was

made a defendant under the charge that he claimed some kind of a lien on the premises, but that his claim was unfounded. On March 24, 1908, in the original suit begun by Elias V. Allen, the death of Marion Allen was suggested and leave was granted to amend the bill in that case, and the bill was amended by making defendants thereto the administratrix of Marion Allen's estate and his children. They filed another answer, in which they denied all the material allegations of Elias V. Allen's bill, and denied that Marion Allen was indebted to Elias V. Allen. Elias V. Allen demurred to the bill for partition and that demurrer was overruled. He then filed a plea of former suit pending and afterwards withdrew that plea and made no further answer in the partition suit. Thereafter, the two cases were consolidated. The master, who had taken a part of the testimony, filed a report thereof and went out of office and the cause was referred to his successor to take further testimony. He took and reported further testimony, including a deposition. The consolidated cause was heard upon those proofs. The bill of Elias V. Allen was dismissed for want of equity, and a partition of the 72 acres among the nine children of Marion Allen was decreed. Elias V. Allen appealed from that decree to the Supreme court and the record was transferred to this court, no freehold being involved. Allen v. Allen, 242 Ill. 510.

If the children of Marion Allen were claiming this land as his heirs at law, the testimony of Elias V. Allen in his own behalf would not have been competent evidence against them, even though taken by the master before Marion's death (Smith v. Billings, 177 Ill. 446), but they claimed, not as his heirs at law, but as grantees in a deed executed by Marion Allen, and hence Elias V. Allen was a competent witness in his own behalf against them. Oswald v. Nehls, 233 Ill. 438. The oral evidence of the negotiations and transactions between the parties is unsatisfactory. Elias V. Allen was nearly seventy years of age when he testified, and his memory was evidently much impaired and very uncertain. The children of Marion Allen who testified could give but a slight account of the conversations and dealings between

Elias and Marion at which they were present. The documentary evidence must be chiefly depended upon.

It is conceded by every one that Elias V. Allen held the title only to secure the repayment of the moneys he had advanced for Marion, with interest thereon. He had received to apply on that indebtedness, the use of the 53 acres for three years, and he was not sure whether it was at $3 or $4 per acre per year. Though the Housh judgment was $787.42, Elias purchased the certificate on November 27, 1888, for $546.41, so that the rent paid a large portion of the debt. We are of opinion that the deed from Elias to Marion, executed on January 26, 1899, in the office of E. P. Williams, is satisfactory proof that it was then agreed between the parties that Elias should have the use and occupancy of the north 40 acres of said tract from that date until the first day of March, 1902, that is, for the three farming years of 1899, 1900 and 1901, and that that use and occupancy by Elias for those years should complete the payment of what Marion was required to pay to redeem the premises.

So far as the bill of Elias V. Allen is based upon the claim that the deed from Elias to Marion was never delivered, but was placed in escrow with Nisley and was wrongfully obtained from Nisley and wrongfully placed on record, we are of opinion that it is not sustained. The burden of proving that allegation was upon Elias. There is no apparent preponderance of evidence that the deed was placed in escrow, but the preponderance appears to be that the deed was delivered to Marion before the parties left the office of E. P. Williams, and that a son of Marion Allen caused the deed to be placed with his own papers in Nisley's bank for reasons pertaining only to Marion Allen and his family.

But it does not follow that Elias should be denied all relief. The Supreme court has held (Allen v. Allen, *supra*) that his bill is to be regarded as a bill for an accounting and for a foreclosure of his lien upon the real estate, treating the deed to him as a mortgage to secure him. The deed back to Marion did not release that lien. The recitals therein, which we have hereinabove set out, show that the parties there

agreed that what Marion had already paid by the use of the land, as already mentioned, and what he was to thereafter pay by giving Elias the use of the north 40 acres for the time therein mentioned would complete the payments of what Marion owed to Elias. It matters not whether they reached this settlement by a careful computation or merely by a proposition made on one side and accepted on the other. The fact is that they then agreed that Elias should be paid the balance due him by giving him the use and occupation of the north 40 acres from January 26, 1899, to March 1, 1902, a period of three years, one month and five days, the further provision being added that Marion should pay the taxes on the land during that period and that, if Elias was obliged to pay them, he should have a lien on the land for such taxes. The parties fixed the use of this land for that period as a compensation to Elias for what was still due him. He had not had the land nor anything else as its equivalent. We are of opinion that under that deed he has a lien upon the land for just what it was agreed he should have. The decree appealed from deprives him of that right.

As Elias V. Allen did not receive the use of the land as agreed, he should now be paid the value of said use and interest thereon, and should have a lien on the undivided half of said north forty acres therefor. The decree is therefore reversed, and the cause is remanded, with directions to the court below to hear proof and ascertain the fair cash rental value of said forty acres for the respective periods from January 26, 1899, to March 1, 1900; from March 1, 1900, to March 1, 1901; and from March 1, 1901, to March 1, 1902; and to allow Elias V. Allen said rentals with interest on such rental value at the rate of five per cent per annum from the end of each such rental year to the entry of the decree, and to enter a decree of partition, giving Elias V. Allen a lien upon the undivided one-half of said forty acres for the total sum of said rentals and the interest, and providing for the payment thereof from the proceeds of the sale of said undivided one-half of forty acres, if partition be not made.

*Reversed and remanded with directions*